UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY G. PHILPOT, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:14-cv-01790-RLY-MJD |
| 420 MAGAZINE, INC., | ) |
| Defendant. | ) |

**ORDER AND REPORT AND RECOMMENDATION ON PENDING MOTIONS**

This matter comes before the Court on Plaintiff's Motion for Entry of Default [Dkt. 8]; Defendant's Motion to Dismiss [Dkt. 9]; Defendant's Motion for Leave to File First Amended Brief in Support of Motion to Dismiss [Dkt. 15]; and Plaintiff's First Motion for Rule 11 Sanctions. [Dkt. 16.] For the reasons set forth below, the Court **DENIES AS MOOT** Defendant's Motion for Leave to File First Amended Brief in Support of Motion to Dismiss. [Dkt. 15.] The Magistrate Judge also recommends that the Court **GRANT** Defendant's Motion to Dismiss [Dkt. 9]; **DENY** Plaintiff's Motion for Entry of Default [Dkt. 8]; and **DENY** Plaintiff's First Motion for Rule 11 Sanctions. [Dkt. 16.]

**I.     Background**

Larry G. Philpot ("Plaintiff" or "Philpot") is a professional photographer who resides in Indianapolis, Indiana. [Dkt. 1 ¶ 5 (Compl.).] In 2009, he photographed musician Willie Nelson during a performance in St. Louis, Missouri. [*Id.* ¶ 8.] He subsequently registered the photograph with the United States Copyright Office, [*id.*], and licensed the photograph to be used by others under the terms of the Creative Commons Attribution 2.0 Generic License (the "CC 2.0"). [*Id.* ¶

1

10.] That license requires, among other provisions, that licensees reference the CC 2.0 with every copy of the photograph and attribute the photo in the manner specified by the author.[1] [*Id.* ¶ 11.]

Sometime later, Plaintiff became aware that 420 Magazine, Inc. ("Defendant" or "420") had allegedly published the Willie Nelson photograph on its website, www.420magazine.com.[2] [*Id.* ¶¶ 12-13.] Plaintiff claims that Defendant did so without permission and without complying with the terms of the CC 2.0. [*Id.*] When Plaintiff contacted Defendant about the publication, Defendant eventually agreed to remove the photograph from its website, but Defendant refused to pay for the allegedly unauthorized use of the photo. [*Id.* ¶¶ 27-29.]

Plaintiff then commenced this lawsuit. [Dkt. 1.] He alleges that Defendant directly infringed his copyright in the Nelson photograph by publishing the photo on its website. [*Id.* ¶ 19.] He also contends that Defendant is liable for vicarious or contributory copyright infringement for its role in allowing others to copy the Nelson photograph. [*Id.* ¶¶ 19, 25.]

Plaintiff filed his complaint with this Court on October 31, 2014. [*See* Dkt. 1.] He then filed proof of service indicating Defendant had been served on November 4, 2014. [*See* Dkt. 3.] That gave Defendant until November 25, 2014 to answer or otherwise respond to Plaintiff's complaint. *See* Fed. R. Civ. P. 12(a)(1)(A).

Defendant, however, did nothing until December 17, 2014. [*See* Dkt. 5.] At that time, Defendant moved for an extension of time until December 23, 2014 to answer or otherwise respond to Plaintiff's complaint. [*Id.*] Defendant acknowledged that the deadline to respond had passed, but stated 1) that it had been served at its old address and did not actually receive the

---

[1] Plaintiff in this case specified that the attribution should read: "Photo by Larry Philpot, www.soundstagephotography.com." [*Id.*]
[2] Defendant's website publishes articles and other materials related to the use of and efforts to legalize marijuana. [*See* Dkt. 1 ¶ 6.] As will become relevant later, the website includes, among other materials, 1) listings for attorneys who provide marijuana-related services; and 2) listings for "headshops," which are stores specializing in tobacco- and marijuana-related products. [*See* Dkt. 14 at 2.]

2

summons and complaint until November 15, 2014; and 2) that it had diligently attempted to engage an Indiana attorney to respond to the complaint, but had been unable to reach an agreement in time to meet the deadline. [*See id.*] The Court granted Defendant's motion for an extension on December 18, 2014. [Dkt. 6.]

The next day, Plaintiff filed the currently pending Motion for Entry of Default. [Dkt. 8.] In that motion, Plaintiff seeks a clerk's entry default pursuant to Fed. R. Civ. P. 55(a) on the grounds that the deadline for Defendant to answer or respond to Plaintiff's complaint had passed. [*See id.*]

Having already received an extension of that deadline, [*see* Dkt. 6], Defendant understandably did not respond to Plaintiff's motion for default. Instead, on December 22, 2014, Defendant filed the currently pending Motion to Dismiss. [Dkt. 9.] Defendant argues that dismissal is required under Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Defendant. [*See id.*]

The parties briefed the motion to dismiss, but Plaintiff found Defendant's brief objectionable: on January 29, 2015, he filed the currently pending First Motion for Rule 11 Sanctions, [Dkt. 16], in which he alleges that Defendant's brief in support of its motion to dismiss contains "factual contentions that lack evidentiary support or are unlikely to have evidentiary support after a reasonable opportunity for further investigation or discovery." [*Id.* at 2.] He further alleges that Defendant's counsel "did not make a reasonable inquiry into the facts or law" before filing the brief at issue. [*Id.* at 4.]

Defendant did not respond to this motion. On January 30, 2015, however, Defendant filed its Motion for Leave to File First Amended Brief in Support of Motion to Dismiss. [Dkt. 15.] Defendant asks for leave to amend its brief by attaching "the Affidavit of Rob Griffin,

3

Defendant's principal." [*Id.* at 1.] Mr. Griffin's affidavit will "provide evidentiary support for any factual assertions" in Defendant's Motion to Dismiss. [*Id.* at 2.] Plaintiff opposes this amendment, [*see* Dkt. 19], and the Court now addresses the parties' various motions.

## II. Discussion

The Court first rules on Defendant's motion to amend its brief in support of its motion to dismiss, [Dkt. 15], and then addresses the motion to dismiss itself. [Dkt. 9.] The Court then considers Plaintiff's motion for default, [Dkt. 8], and finally addresses Plaintiff's motion for sanctions. [Dkt. 16.]

### A. Defendant's Motion to Amend

Defendant seeks "leave to amend Defendant's Brief in Support of Motion to Dismiss by filing [its] First Amended Brief in Support of Motion to Dismiss." [Dkt. 15 at 1.] The amended brief would include the Affidavit of Rob Griffin, who is the sole owner of Defendant. [*See id.*; *see also* Dkt. 15-2 ¶ 2 (Aff. of Rob Griffin).] Defendant contends that this affidavit is necessary to support the factual contentions in its motion to dismiss and its brief in support of that motion. [Dkt. 15 at 2.][3]

Defendant argues that his amendment is permissible under Fed. R. Civ. P. 15. [*See* Dkt. 15 at 1 (citing Fed. R. Civ. P. 15(a)). Rule 15, however, applies to pleadings, not briefs, and so this rule does not provide the proper standard to evaluate Defendant's motion. *See, e.g.*, *Entrust Mgmt. Co. v. Gold*, No. 84 C 7029, 1986 WL 5668, at *2 n.1 (N.D. Ill. May 1, 1986) ("Rule 15(d) does not apply to supplemental briefs: it applies to complaints, answers, and related pleadings. Briefs are not pleadings.").

---

[3] Plaintiff opposes the motion to amend, but his responsive brief, [Dkt. 19], primarily reiterates the arguments in his motion for sanctions. [*See, e.g.*, *id.* ¶ 14 ("Plaintiff Philpot has discovered that the Proposed Amended Motion contains many of the same defects that prompted the Rule 11 Motion for Sanctions.").] The Court will thus address Plaintiff's arguments when ruling on Plaintiff's motion for sanction.

Articulating an alternative standard to assess the motion is unnecessary. Defendant's proposed amendment consists only of an affidavit to support its contention that this Court lacks personal jurisdiction over it. [*See* Dkt. 15.] As explained more fully below, a court evaluating personal jurisdiction is free to look beyond the pleadings and consider affidavits that the parties have submitted. *See, e.g.*, *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) ("To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits."); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (analyzing personal jurisdiction based on "relevant facts presented in the record"). In addition, Defendant notes that it already submitted Mr. Griffin's affidavit as an exhibit with its reply in support of its motion to dismiss.[4] [*See* Dkt. 14-3.] The Court has thus already received Griffin's affidavit and it is already part of the record. Hence, in accordance with *Nelson* and *Purdue*, the Court may consider Mr. Griffin's affidavit, and it is unnecessary for Defendant to amend its brief to attach the affidavit. The Court therefore **DENIES AS MOOT** Defendant's motion to amend.

### B. Motion to Dismiss

Defendant asks the Court to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(2) because this Court allegedly lacks personal jurisdiction over Defendant. [Dkt. 10 at 4.] When a district court has subject-matter jurisdiction on the basis of a federal statute that does not authorize

---

[4] Typically, a party may not submit new evidence in its reply brief. *See, e.g.*, *Silver Streak Indus., LLC v. Squire Boone Caverns, Inc.*, No. 4:13-CV-00173-RLY, 2014 WL 220682, at *1 (S.D. Ind. Jan. 21, 2014) ("New arguments and evidence may not be raised for the first time in a reply brief."). The affidavit at issue here, however, either 1) lends factual support to arguments that Defendant already made in its opening brief [*see, e.g.*, Dkt. 14-3 ¶ 7 (supporting contention that Defendant does not do business in Indiana)]; or 2) addresses arguments that Plaintiff made in his responsive brief. [*See, e.g.*, *id.* ¶ 9 (disputing Plaintiff's allegation that Defendant contracts to advertise services in Indiana).] It was thus not inappropriate to attach the affidavit with the reply.

nationwide service of process,[5] personal jurisdiction is governed by the law of the forum state. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Whether an Indiana court would have personal jurisdiction over Defendant would typically require a two-step inquiry. *Purdue*, 338 F.3d at 779. The Court would have to 1) analyze whether the law of Indiana—specifically Indiana Trial Rule 4—subjects Defendant to personal jurisdiction; and 2) determine whether the exercise of personal jurisdiction over Defendant would comport with the requirements of federal due process. *Id.*

Indiana Trial Rule 4, however, "expand[s] personal jurisdiction to the full extent permitted by the Due Process Clause." *Portee v. Cleveland Clinic Found. Care of CT Corp. Sys.*, No. 1:13-CV-01582-SEB-TA, 2014 WL 3741002, at *1 (S.D. Ind. July 28, 2014) (quoting *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966 (Ind. 2006)). The only question is thus whether exercising personal jurisdiction over Defendant would violate the requirements of federal due process. *See id.* The Due Process Clause, in turn, allows for exercise of specific or general personal jurisdiction. The Court first addresses specific jurisdiction.

1. **Specific Personal Jurisdiction**

The existence of specific jurisdiction turns on "whether there are sufficient minimum contacts between [Defendant], this litigation and Indiana to . . . say that it is fundamentally fair to require [Defendant] to participate in this litigation and to be bound by the judgment of a court sitting in Indiana." *Purdue*, 338 F.3d at 780 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). This inquiry depends largely on "foreseeability," in that the

---

[5] The Court's jurisdiction in this case is based on the Copyright Act, which is one such statute. *See, e.g.*, *Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*, 766 F. Supp. 2d 854, 858 (N.D. Ill. 2011) ("The Copyright Act does not provide for nationwide service of process.").

defendant's contacts with the forum state must be so significant that the defendant "could have anticipated being haled into the courts of the state with respect to the matter at issue." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The contacts must result from the defendant's activities—not the "unilateral activity of the plaintiff or some other entity"—and the contacts must show that the defendant "purposefully availed itself of the privilege of conducting activities within the forum state." *Id.* In addition, the contacts at issue must be related to the conduct giving rise to the plaintiff's alleged injury. *Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012).[6]

The Seventh Circuit has provided specific procedures to evaluate personal jurisdiction in the context of a motion to dismiss. The plaintiff's complaint need not include facts alleging personal jurisdiction, but once the defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue*, 338 F.3d at 782. The nature of that burden depends on whether the district court holds an evidentiary hearing: If the court holds such a hearing, then "the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id.* Where—as here—a court instead rules only on the basis of the parties' written submissions, then "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Id.* (quotation omitted).

---

[6] If the defendant does have sufficient minimum contacts with the forum state, the Court should also consider whether the exercise of personal jurisdiction "would be compatible with 'fair play and substantial justice.'" *Purdue*, 338 F.3d at 781(quoting *International Shoe*, 326 U.S. at 320). This involves factors such as "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quotation omitted). These factors may justify an exercise of jurisdiction when "the defendant's minimum contacts with the forum are relatively weak (although existent)," but will "rarely will justify a determination against personal jurisdiction." *Id.* at 781 & n.10. As described below, Defendant in this case does not have even "weak" contacts with the forum state, such that assessing these factors is not necessary.

In addition, either party may submit affidavits or other evidence in support of their contentions. *See id.* If the defendant has submitted such "evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. Under the *prima facie* standard, however, "the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* at 782 (quoting *Nelson*, 717 F.2d at 1123).

Defendant in this case moved to dismiss under Rule 12(b)(2), [Dkt. 9], and then submitted an affidavit from its owner, Rob Griffin, in support of its contentions. [Dkt. 14-3.] Defendant stated that it conducted no business in Indiana; that it did no advertising in Indiana; that it sold no products in Indiana; and that it had no connections of any kind with Indiana. [Dkt. 10 at 5.] Defendant's affidavit supported this contention. [*See, e.g.*, Dkt. 14-3 ¶ 7 ("[Defendant] does not have any offices, paid employees, agents or operations in Indiana, has no phone or fax listing in Indiana, has no bank accounts in Indiana, has never paid taxes in Indiana, and does not own, lease or control any property or assets in Indiana. Defendant does not sell products, advertise or have any connections to Indiana.").] Based on Defendant's motion and supporting evidence, the burden thus shifted to Plaintiff to make out a *prima facie* showing of jurisdiction. *See Purdue*, 338 F.3d at 782-83.

Plaintiff's attempt to meet that burden falls short. In his response to Defendant's motion, Plaintiff contends that Defendant "sells advertising for both attorneys and 'headshops' listed by state, in Indiana, targeting Indiana residents," such that Defendant has been "deliberately availing itself of services in the forum State." [Dkt. 11 at 2.] As support, Plaintiff submitted two screenshots from Defendant's website. The first shows a list of attorneys organized by state. [Dkt. 11-1 at 1.] In addition to attorneys in every other state, it includes eleven attorneys in

8

Indiana. [*Id.*] The second shows a list of headshops organized by state. [*Id.* at 2]. In addition to headshops in every other state, it includes fifty-six headshops in Indiana. [*Id.* at 2.] Plaintiff also submitted a declaration in which he states that the screenshots are "true and accurate" depictions of Defendant's website that prove that Defendant "deliberately target[s] the Indiana market." [Dkt. 11-2.]

Defendant's reply brief and supporting affidavit address these contentions and refute the allegation that Defendant "deliberately targets" Indiana. Defendant states that the "attorneys listed in the Indiana section" of its website were "simply copied from the National Organization for the Reform of Marijuana Laws ('NORML') attorney directory on the NORML website." [Dkt. 14 at 2.] The headshops listed on Defendant's website were similarly "copied from the directory on the website www.headshops.com." [*Id.*] According to Defendant, "[n]one of the Indiana attorneys or headshops listed [on its] Website directory have paid any advertising fees to Defendant." [*Id.*] Rather, the "directory listing are provided by Defendant as a free, informational public service to users of the Website." [*Id.*]

Mr. Griffin's affidavit supports these contentions. He states that "Defendant never sold any goods or services, including advertising services, or entered into any other financial transaction with any Indiana residents," [Dkt. 14-3 ¶ 8], and he confirms that the attorneys and headshops were simply copied from third-party websites. [*Id.* ¶ 9.] He also confirms the contention that "[n]one of the attorneys or headshops . . . paid any advertising fees to Defendant." [*Id.*]

Based on the above evidence, the Court concludes that Defendant does not deliberately target Indiana with its listing of attorneys and headshops. The Court acknowledges that it must resolve "all disputes concerning relevant facts" in Plaintiff's favor, *Purdue*, 338 F.3d at 782, but

9

here, the evidence does not actually present a factual dispute. The only evidence that Plaintiff has presented is that Defendant's website has listings for attorneys and headshops in Indiana, as well as in every other state. The Court accepts this fact as true. Plaintiff then *assumes* that these listings show that Defendant must deliberately target Indiana by selling advertising space on its website to attorneys and headshops in Indiana. [*See* Dkt. 11.] Plaintiff offers no evidence to support this supposition. His affidavit *claims* that Defendant disseminates "advertisements [that] deliberately target the Indiana market," [Dkt. 11-2 ¶¶ 6-7], but he alleges no facts indicating how he knows that Defendant is selling advertising space to such entities. [*See id.*] His claim of deliberately-targeted advertising is just that—a claim. It is a conclusion without support, and it is thus entitled to little weight. *Cf. Weigel v. Target Stores*, 122 F.3d 461, 468 (7th Cir. 1997) (giving no weight to affidavit containing "nothing more than a naked conclusion unsupported by any factual foundation" when considering motion for summary judgment).

Defendant, in contrast, provided an affidavit from its "sole owner," [Dkt. 14-3 ¶ 2], who would naturally be in a position to know whether and if so how Defendant sells advertising space or otherwise enters agreements with other parties. That affidavit directly contradicts Plaintiff's unsubstantiated claim of deliberately-targeted advertising. [*Id.* ¶ 9 ("Defendant never directly advertised in Indiana . . . . None of the Indiana attorneys or headshops listed on the Website have paid any advertising fees to Defendant[.]").] In addition, the affidavit offers a credible explanation for how the directory was compiled if not through the sale of advertising space. [*Id.* (explaining that attorneys and headshops were copied from third-party websites).] Based on this evidence, the Court finds that Defendant has not deliberately advertised its products or services in Indiana and has not contracted with or otherwise agreed to any advertising arrangement with any Indiana attorneys or headshops.

This, in turn, leaves no substantive evidence that could support a finding that Defendant has sufficient minimum contacts with Indiana to support an exercise of personal jurisdiction. Defendant's owner states that, in addition to not advertising in Indiana, Defendant has never sold products, paid employees, owned property, or maintained bank accounts in Indiana. [Dkt. 14-3 ¶ 7.] In fact, Defendant "does not . . . have any connections to Indiana." [*Id.*] Plaintiff, meanwhile, argued only that Defendants *did* advertise in Indiana. [*See* Dkt. 11.] He therefore has not met his burden to go "beyond the pleadings and submit affirmative" evidence to rebut Defendant's contentions. *Purdue*, 338 F.3d at 783. Thus, the Court accepts as true Defendant's statements that it does not sell products, own property, pay employees, or otherwise conduct activities in or maintain connections with Indiana.

In light of this finding, the Court cannot exercise personal jurisdiction over Defendant. Without any sort of activity directed at this state, the Court cannot find that Defendant "purposefully availed[ed] itself of the privilege of conducting activities within" this state. *Purdue*, 338 F.3d at 780. Likewise, without maintaining any connection to this state, Defendant could not "have anticipated being haled into the courts" of this state. *Id.* Defendant, in short, does not have connections with Indiana strong enough that it could foresee being called to litigate in this state, such that an Indiana court cannot require it to do so. *See id.*

In addition, even if the Court accepted Plaintiff's contention that Defendant sells advertising space to other parties in this state, this finding would not suffice to establish personal jurisdiction over Defendant. As previously noted, the Defendant's minimum contacts for specific jurisdiction must be related to the Plaintiff's alleged injury. *See Felland*, 682 F.3d at 676. Plaintiff in this case complains that Defendant directly infringed and assisted others in infringing his copyright in a photograph of Willie Nelson. [*See* Dkt. 1.] Plaintiff, however, never argued

11

that Defendant's alleged advertising in Indiana made use of this photo, [*see* Dkt. 11], and the screenshots he submitted to try to prove Defendant's contacts with Indiana did not include this photo. [*See* Dkt. 11-1.] In addition, Defendant's owner explained that the claimed infringement occurred when third parties allegedly posted a cropped version of the Willie Nelson photo on one of the website's forums. [Dkt. 14-3 ¶ 10.] This portion of the website is "separate . . . from the attorney directory or headshop directory." [*Id.* ¶ 11.] Thus, even if these directories *did* constitute minimum contacts with Indiana, they were unrelated to Plaintiff's alleged injury, and hence could not support the exercise of specific jurisdiction. *See Felland*, 682 F.3d at 676.

The Court's conclusion in this case is also consistent with Seventh Circuit precedent governing personal jurisdiction over parties who operate Internet websites. In *be2 LLC v. Ivanov*, the Seventh Circuit cautioned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" 642 F.3d 555, 558 (7th Cir. 2011) (quotation omitted). Instead, to be subject to personal jurisdiction in a given forum, a website operator must go "[b]eyond simply operating an interactive website that is accessible from the forum state." *Id.* at 558-59. The operator must "in some way *target* the forum state's market." *Id.* at 559 (emphasis original).

In this case, Defendant acknowledges that at least a "small portion of the visitors to [its] Website are located in Indiana," [Dkt. 14-3 ¶ 8], and it acknowledges that its website is interactive, in that its users may "post about and discuss topics" on the website's forum. [*Id.* ¶ 6.] In accordance with *be2 LLC*, however, this is not enough to subject Defendant to personal jurisdiction in Indiana. The Court, as explained above, has determined that Defendant does not target Indiana, and without such targeting, Defendant cannot be haled into this state's courts. *See*

*be2 LLC*, 642 F.3d at 559. The Court therefore does not have specific personal jurisdiction over Defendant.

### 2. General Personal Jurisdiction

"Unlike specific jurisdiction, general jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue*, 338 F.3d at 787. Thus, the defendant's contacts with the forum, need not be related to the conduct at issue in the litigation. *See id.* The "constitutional requirement for general jurisdiction," however, is "considerably more stringent than that required for specific jurisdiction." *Id.* (quotation omitted). For the Court to exercise general jurisdiction over a defendant, the defendant must have "continuous and systematic general business contacts" with the forum. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). In this case, then, Plaintiff must show that Defendant has contacts with Indiana that are so continuous that it would be "fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.* (emphasis original).

Plaintiff has not made this showing. As explained above, Defendant's contacts with Indiana are insufficient to establish even specific personal jurisdiction over Defendant. As such, Defendant's contacts are certainly insufficient to satisfy the "considerably more stringent" standard required for general jurisdiction. *Purdue*, 338 F.3d at 787; *see also id.* (quotation omitted) ("[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction.").

In addition, Defendant in this case noted in its opening brief that "no facts are alleged to support general jurisdiction." [Dkt. 10 at 5.] Plaintiff did not dispute this contention, [*see* Dkt. 11], and in light of Defendant's dearth of contacts with this state, the Court agrees with

13

Plaintiff's tacit acknowledgement that this Court cannot exercise general jurisdiction over Defendant.

For these reasons, the Court lacks both specific and general personal jurisdiction over Defendant. The Magistrate Judge thus recommends that the Court **GRANT** Plaintiff's Motion to Dismiss. [Dkt. 9.][7]

### C. Plaintiff's Motion for Default

Plaintiff requests a clerk's entry of default pursuant to Fed. R. Civ. P. 55(a). [Dkt. 8 at 1.] As described above, however, the Court lacks personal jurisdiction over Defendant. In these circumstances, the Court cannot enter a default judgment[8] against Defendant. *See, e.g.*, *Swaim v. Moltan Co.,* 73 F.3d 711, 716 (7th Cir. 1996) ("We will . . . set aside a default judgment as a per se abuse of discretion if the district court that entered the judgment lacked jurisdiction."). Accordingly, the Magistrate Judge recommends that the Court **DENY** Plaintiff's Motion for Entry of Default. [Dkt. 8.]

In addition, Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff in this case included an affidavit in support of his motion in which he stated that "the time limit of 21 days in which the Defendant may plead or otherwise defend has expired; that the Defendant

---

[7] The dismissal should be without prejudice to Plaintiff's right to refile this case in a district that has personal jurisdiction over Defendant. *See, e.g.*, *Schmidt v. Europea Ltd.*, No. IP 00-1739-C-T/G, 2001 WL 868696, at *3 (S.D. Ind. May 18, 2001) ("A dismissal for lack of personal jurisdiction is not a decision on the merits and thus is without prejudice. If the applicable statute of limitations has not yet run, the Plaintiff could file this action in a district which has personal jurisdiction.").

[8] Plaintiff's motion technically seeks a clerk's entry of default under Rule 55(a), rather than a default judgment under Rule 55(b). [Dkt. 8 at 1.] The clerk's entry of default, however, is merely a prerequisite to the entry of a default judgment. *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006) ("Entry of default must precede an entry of default judgment."). If a court lacking jurisdiction cannot enter a default judgment, it thus makes little sense to allow such a court's clerk to enter default.

has not pled, answered, or otherwise defended, and that the time for the Defendant to answer, plead, or otherwise defend has not been extended." [Dkt. 8-1 at 1.]

By the time Plaintiff filed his motion, however, the time for Defendant to answer, plead, or otherwise defend *had* been extended, [*see* Dkt. 6 (granting extension of time until December 23, 2014)], and Defendant then filed its motion to dismiss within the time period granted by the Court's extension. [*See* Dkt. 9.] Thus, even if Defendant neglected the initial November 25, 2014 deadline, Defendant was not actually in default at the time Plaintiff filed his motion. The Court therefore concludes that even if the Court did have jurisdiction over Defendant, default would not be appropriate. Again, then, the Magistrate Judge recommends that the Court **DENY** Plaintiff's Motion for Entry of Default. [Dkt. 8.]

**D. Plaintiff's Motion for Sanctions**

Plaintiff asks the Court to "impose sanctions against both Defendant 420 Magazine, Inc., and Defendant's Attorney Kenan Farrell, for filing his Brief in Support of [Defendant's] Motion to Dismiss in violation of Federal Rule of Civil Procedure 11(b)." [Dkt. 16 at 1.] As noted above, the Court lacks personal jurisdiction over Defendant. This finding, however, does not preclude an entry of Rule 11 sanctions. *See, e.g.*, *Meredith, Inc. v. Mktg. Res. Grp. of Oregon, Inc.*, No. 4:04CV1727-DJS, 2005 WL 2334294, at *5 (E.D. Mo. Sept. 23, 2005) ("The Court is persuaded that sanctions against Freedom and MRG . . . are appropriate based on the misrepresentation concerning contacts with Northern. This is so even though the Court ultimately was persuaded that it lacked personal jurisdiction over MRG and Freedom for reasons other than their fictitious lack of contacts with Victor Northern."); *see also Curtis Mgmt. Grp., Inc. v. Acad. of Motion Picture Arts & Sciences*, 717 F. Supp. 1362, 1371-73 (S.D. Ind. 1989) (striking defendant's

15

motion to dismiss as a Rule 11 sanction even though "personal jurisdiction over the [defendant] has not been proved").

Rule 11(b) provides that by presenting a pleading, motion, or other paper to the Court, an attorney or unrepresented certifies that the paper:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Plaintiff alleges that Defendant and its attorney violated this Rule by 1) stating that Defendant "has not engaged and does not engage in any business in Indiana;" and 2) stating that "Defendant is not subject to personal jurisdiction in Indiana" because "Defendant has not and does not conduct business in Indiana." [Dkt. 16 at 3.] Plaintiff contends Defendant knew these statements were false because he provided Defendant with the previously mentioned screenshots that purported to show "Indiana attorneys advertising their services to Indiana residents." [*Id.*]

As explained above, however, Plaintiff's screenshots did not actually establish that Defendant did any advertising in Indiana or agreed with any Indiana attorneys to advertise those attorneys' services. Plaintiff's contentions rest on an erroneous conclusion about what his screenshots prove. They do not establish that Defendant made "factual contentions [without] evidentiary support," that Defendant submitted its brief for an "improper purpose," or that Defendant in any other way violated Rule 11.

Plaintiff repeats his same argument in his brief in response to Plaintiff's motion to amend. [*See* Dkt. 19 ¶ 14 ("Plaintiff Philpot has discovered that the Proposed Amended Motion contains many of the same defects that prompted the Rule 11 Motion for Sanctions.").] In that brief, however, Plaintiff also alleges that Defendant misrepresented its address: he notes that in its request for an extension of time in which to respond to Plaintiff's complaint, Defendant asserted that it had been initially served at an "old" address. [*See* Dkt. 5.] He then notes that Defendant listed the same allegedly "old" address on a document that Defendant recently filed with the U.S. Copyright Office. [*See* Dkt. 19-2.] He thus concludes that Defendant must have misled the Court in support of its motion for an extension. [*See* Dkt. 19 at 3.]

The Court does not find that this alleged misrepresentation warrants sanctions. Defendant's motion for an extension stated that Plaintiff's "Complaint was served on November 4, 2014 at an old address which only forwards mail to Defendant's attention once per month." [Dkt. 5 ¶ 1.] Thus, even if the address is an "old" address, Defendant still apparently has some connection to the address that would make it reasonable to list the address on the form submitted to the Copyright Office: perhaps Defendant and its owner maintain the "old" address for business purposes while preferring not to disclose a new, personal address; perhaps Defendant simply maintains the "old" address for the sake of convenience even while operating at a new address. Whatever the reason, Plaintiff has not shown that Defendant made any contention that lacked evidentiary support or was otherwise improper. The Magistrate Judge therefore recommends that the Court **DENY** Plaintiff's Motion for Rule 11 Sanctions. [Dkt. 16.]

### III. Conclusion

For the reasons set forth above, the Court **DENIES AS MOOT** Defendant's Motion for Leave to File First Amended Brief in Support of Motion to Dismiss. [Dkt. 15.] The Magistrate

17

Judge also recommends that the Court **GRANT** Defendant's Motion to Dismiss [Dkt. 9]; **DENY** Plaintiff's Motion for Entry of Default [Dkt. 8]; and **DENY** Plaintiff's First Motion for Rule 11 Sanctions. [Dkt. 16.] Any objections to the Magistrate Judge's recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 02/20/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

LARRY G. PHILPOT
8125 Halyard Way, 1st Floor
Indianapolis, IN 46236

Kenan Larry Farrell
KLF LEGAL
kfarrell@klflegal.com